```
Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
```
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LR TRUST, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR, SHEILA B. JORDAN, MICHAEL M. MCNAMARA, JOHN O'FARRELL, and GRAHAM SMITH, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff LR Trust ("Plaintiff"), on behalf of itself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through its counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for its Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Slack Technologies, Inc. ("Slack" or the "Company") and the members of Slack's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Slack will be acquired by salesforce.com, inc. ("Salesforce") through its wholly owned subsidiaries Skyline Strategies I Inc. ("Merger Sub I") and Skyline Strategies II LLC ("Merger Sub II") (the "Proposed Transaction").

2. On December 1, 2020, Slack and Salesforce issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 1, 2020 (the "Merger Agreement") to sell Slack to Salesforce. Under the terms of the Merger Agreement, each holder of Slack common stock will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each share of Slack common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $27.7 billion.

3. On December 23, 2020, Salesforce filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that Slack stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for Slack and Salesforce; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co LLC ("Goldman"); and (iii) Qatalyst's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Slack's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Slack.

9. Defendant Slack is a Delaware corporation, with its principal executive offices located at 500 Howard Street, San Francisco, California 94105. The Company is the leading channel-based messaging platform, used by millions to align their teams, unify their systems, and drive their

businesses forward. Slack's common stock trades on the New York Stock Exchange under the ticker symbol "WORK."

10. Defendant Stewart Butterfield ("Butterfield") is a co-founder of the Company and has been Chief Executive Officer ("CEO"), Chairperson, and a director of the Company since February 2009.

11. Defendant Andrew Braccia ("Braccia") has been a director of the Company since March 2010.

12. Defendant Edith Cooper ("Cooper") has been a director of the Company since January 2018.

13. Defendant Sarah Friar ("Friar") has been a director of the Company since March 2017.

14. Defendant Sheila B. Jordan ("Jordan") has been a director of the Company since September 2019.

15. Defendant Michael M. McNamara ("McNamara") has been a director of the Company since December 2019.

16. Defendant John O'Farrell ("O'Farrell") has been a director of the Company since April 2011.

17. Defendant Graham Smith ("Smith") has been a director of the Company since December 2018.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Salesforce is a Delaware corporation, with its principal executive offices located at Salesforce Tower, 415 Mission Street, 3rd Fl, San Francisco, California 94105. Salesforce is a global leader in customer relationship management ("CRM") technology that brings companies and

customers together. Founded in 1999, Salesforce enables companies to connect with their customers in new ways through existing and emerging technologies, including cloud, mobile, social, blockchain, voice and artificial intelligence ("AI"). Salesforce's common stock trades on the New York Stock Exchange under the ticker symbol "CRM."

20. Merger Sub I is a Delaware corporation and a wholly owned indirect subsidiary of Salesforce.

21. Merger Sub II is a Delaware limited liability corporation and a direct wholly owned subsidiary of Salesforce.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Slack is the leading channels-based messaging platform, used by millions to align their teams, unify their systems, and drive their businesses forward. Slack offers a secure, enterprise-grade environment that can scale with the largest organizations in the world. It is a new layer of the business technology stack where people can work together more effectively, connect all their other software tools and services, and find the information they need to do their best work.

23. As of January 31, 2020, Slack had more than 660,000 organizations with three or more users, comprised of more than 550,000 organizations on Slack's free subscription plan, and more than 110,000 paid customers.

24. On December 1, 2020, Slack announced its third quarter fiscal year 2021 financial results and business highlights, including total revenue of $234.5 million, an increase of 39% year-over-year. GAAP gross profit was $202.0 million, or 86.1% gross margin, compared to $145.6 million, or 86.3% gross margin, in the third quarter of fiscal year 2020. GAAP operating loss was $65.7 million, or 28.0% of total revenue, compared to a $95.0 million loss in the third quarter of fiscal year 2020, or 56.3% of total revenue. Net cash provided by operations was $33.5 million, or 14% of

total revenue, compared to cash used in operations of $9.1 million, or 5% of total revenue, for the third quarter of fiscal year 2020. Business highlights for the quarter included over 142,000 paid customers, up 35% year-over-year; 1,080 paid customers with greater than $100,000 in annual recurring revenue, up 32% year-over-year; and over 64,000 paid customers using Slack Connect, up from over 52,000 at the end of the preceding quarter. Defendant Butterfield commented on the results, stating:

> We had a phenomenal quarter, headlined by continued acceleration in new paid customer growth, with 12,000 net paid customer additions, up 140% from the same quarter last year. The accelerating growth is partly driven by increased awareness and demand due to the work from home environment, but we believe the larger portion comes from continued product momentum which shows up in the new user experience and, especially, from Slack Connect driving viral growth. Finally, we're thrilled by the continued momentum in the enterprise segment where we're seeing market leaders overwhelmingly choosing Slack for its unmatched security, scalability, flexibility, and user experience.

**The Proposed Transaction**

25. On December 1, 2020, Slack and Salesforce issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN FRANCISCO -- Salesforce (NYSE: CRM), the global leader in CRM, and Slack Technologies, Inc. (NYSE: WORK), the most innovative enterprise communications platform, have entered into a definitive agreement under which Salesforce will acquire Slack. Under the terms of the agreement, Slack shareholders will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each Slack share, representing an enterprise value of approximately $27.7 billion based on the closing price of Salesforce's common stock on November 30, 2020.
>
> Combining Slack with Salesforce Customer 360 will be transformative for customers and the industry. The combination will create the operating system for the new way to work, uniquely enabling companies to grow and succeed in the all-digital world.
>
> "Stewart and his team have built one of the most beloved platforms in enterprise software history, with an incredible ecosystem around it," said Marc Benioff, Chair and CEO, Salesforce. "This is a match made in heaven. Together, Salesforce and Slack will shape the future of enterprise software and transform the way everyone works in the all-digital, work-from-anywhere world. I'm thrilled to welcome Slack to the Salesforce Ohana once the transaction closes."

"Salesforce started the cloud revolution, and two decades later, we are still tapping into all the possibilities it offers to transform the way we work. The opportunity we see together is massive," said Stewart Butterfield, Slack CEO and Co-Founder. "As software plays a more and more critical role in the performance of every organization, we share a vision of reduced complexity, increased power and flexibility, and ultimately a greater degree of alignment and organizational agility. Personally, I believe this is the most strategic combination in the history of software, and I can't wait to get going."

**Acquisition to Create the Operating System for the New Way to Work**

The events of this year have greatly accelerated the move by companies and governments to an all-digital world, where work happens wherever people are—whether they're in the office, at home or somewhere in between. They need to deliver connected experiences for their customers across every touchpoint and enable their employees to work seamlessly wherever they are.

Together, Salesforce and Slack will give companies a single source of truth for their business and a unified platform for connecting employees, customers and partners with each other and the apps they use every day, all within their existing workflows.

**Slack to Become the New Interface for Salesforce Customer 360**

Salesforce is the #1 CRM that enables companies to sell, service, market and conduct commerce, from anywhere. Slack brings people, data and tools together so teams can collaborate and get work done, from anywhere. Slack Connect extends the benefits of Slack to enable communication and collaboration between a company's employees and all its external partners, from vendors to customers.

Slack will be deeply integrated into every Salesforce Cloud. As the new interface for Salesforce Customer 360, Slack will transform how people communicate, collaborate and take action on customer information across Salesforce as well as information from all of their other business apps and systems to be more productive, make smarter, faster decisions and create connected customer experiences.

**Slack To Expand Enterprise Footprint as Part of the World's #1 CRM**

Slack serves leading organizations in every industry around the world, from the fastest growing startups to Fortune 500 companies, such as Starbucks, Target and TD Ameritrade, along with leading academic institutions, non-profits, and governments in more than 150 countries.

As part of the world's #1 CRM, Slack will be able to expand its presence in the enterprise, not just among Salesforce customers, but for any company undergoing digital transformation. Upon the close of the transaction, Slack will become an operating unit of Salesforce and will continue to be led by CEO Stewart Butterfield.

**Combination to Form the Largest Open Ecosystem of Apps and Workflows for Business**

Connecting people and data across systems, apps and devices is one of the biggest challenges companies face in today's all-digital world.

Slack's open platform seamlessly integrates with more than 2,400 apps that people use to collaborate, communicate and get work done. With the largest enterprise app ecosystem, the Salesforce platform is the easiest way to build and deliver apps to connect with customers in a whole new way.

Together, Salesforce and Slack will create the most extensive open ecosystem of apps and workflows for business and empower millions of developers to build the next generation of apps, with clicks not code.

**Details on the Proposed Transaction**

The board of directors of each of Salesforce and Slack have approved the transaction and the Slack board recommends that Slack stockholders approve the transaction and adopt the merger agreement. The transaction is anticipated to close in the second quarter of Salesforce's fiscal year 2022, subject to approval by the Slack stockholders, the receipt of required regulatory approvals and other customary closing conditions.

Salesforce has also entered into a voting agreement with certain stockholders of Slack common stock, under which each such stockholder has agreed to vote all of their Slack shares in favor of the transaction at the special meeting of Slack stockholders to be held in connection with the transaction, subject to certain terms and conditions. The Slack shares subject to the agreement represent approximately 55% of the current outstanding voting power of the Slack common stock.

Salesforce expects to fund the cash portion of the transaction consideration with a combination of new debt and cash on Salesforce's balance sheet. Salesforce has obtained a commitment from Citigroup Global Markets Inc., Bank of America, N.A. and JPMorgan Chase Bank, N.A. for a $10.0 billion senior unsecured 364-day bridge loan facility, subject to customary conditions.

**Insiders' Interests in the Proposed Transaction**

26.     Slack insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Slack.

27.     Notably, certain Company insiders have secured positions for themselves with the surviving company following the closing of the merger. Specifically, each of defendant Butterfield, Cal Henderson, and Tamar Yehoshua entered into offer letters with Salesforce pursuant to which defendant Butterfield will serve as President and CEO of Slack, Mr. Henderson will serve as Chief Technology Officer of Slack and Ms. Yehoshua will serve as Chief Product Officer of Slack. Under the terms of the Merger Agreement, defendant Butterfield will be entitled to an annual base salary of $650,000, and Mr. Henderson and Ms. Yehoshua will each be entitled to an annual base salary of $500,000.

28.     Moreover, Slack insiders stand to reap substantial financial benefits for securing the deal with Salesforce. Pursuant to the Merger Agreement, all outstanding options, restricted stock units ("RSUs"), and restricted share awards held by the Company's non-employee directors will vest and convert into the right to receive the Merger Consideration. The estimated aggregate amount that would be payable to Slack's seven non-employee directors in settlement of their 142,263 Slack RSUs that are currently outstanding is $6,081,743, and the estimated amount that would be payable to two of Slack's non-employee directors in settlement of such directors' 130,377 currently outstanding Slack restricted shares is $5,573,617.

29.     In addition, if they are terminated in connection with the Proposed Transaction, Slack's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| Stewart Butterfield | 820,251 | 92,949,856 | — | 93,770,107 |
| Allen Shim | 620,120 | 21,150,293 | — | 22,029,213 |
| Robert Frati | 878,920 | 16,543,881 | — | 17,164,001 |

**The Registration Statement Contains Material Misstatements or Omissions**

30.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Slack's stockholders. The Registration Statement misrepresents

or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for Slack and Salesforce; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Qatalyst and Goldman; and (iii) Qatalyst's and Company insiders' potential conflicts of interest.

*Material Omissions Concerning Slack's and Salesforce's Financial Projections*

32. The Registration Statement omits material information regarding the financial projections for Slack and Salesforce.

33. With respect to Slack management's financial projections, the Registration Statement fails to disclose all line items underlying the calculation of unlevered free cash flow ("UFCF") including (a) cash taxes, (b) the net impact of depreciation and amortization, (c) capital expenditures, (d) changes in net working capital, (e) amortization of deferred costs, (f) non-cash operating lease expense, (g) payroll taxes related to stock-based compensation, and (h) stock-based compensation.

34. Moreover, the Registration Statement fails to disclose any financial projections for Salesforce. The omission of this information regarding Salesforce's potential future financial performance is critical as the Merger Consideration is partially comprised of Salesforce common stock.

35. The omission of this information renders the statements in the "Projected Financial Information" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Qatalyst's and Goldman's Financial Analyses*

36. The Registration Statement fails to disclose material information regarding Qatalyst's and Goldman's financial analyses.

37. The Registration Statement describes Qatalyst's and Goldman's fairness opinions and the various valuation analyses it performed in support of their opinions. However, the description of Qatalyst's and Goldman's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Slack's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst's and Goldman's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

38. For example, the Registration Statement sets forth that in rendering its fairness opinion, Qatalyst "utilized both the consensus of third-party research analysts' projections of the future financial performance of Slack as of November 30, 2020 (which we refer to as the "analyst projections") and the Management Projections." Registration Statement at 72. Yet, the Registration Statement fails to disclose the analyst projections utilized by Qatalyst for its analyses.

39. With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal value of Slack; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.25% to 9.75%; (iii) the implied perpetuity growth rates resulting from the analysis; (iv) Qatalyst's basis for applying fully-diluted enterprise value to next twelve month's estimated UFCF multiples of 30.0x to 45.0x; (v) each of the following items provided by Slack management as of October 31, 2020 (a) cash and cash equivalents, (b) the face value of Slack's outstanding convertible debt, and (c) the value of Slack's non-controlling interest; and (vi) the fully diluted shares of Slack outstanding as of November 27, 2020 used in the analysis.

40. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the assumed terminal year NTM UFCF utilized by Goldman to calculate Slack's terminal value; (ii) the range of illustrative terminal values for Slack; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.5% to 9.5%; (iv) Goldman's basis for applying terminal year multiples of 25.0x to 35.0x; (v) the net debt of Slack; and (vi) the fully diluted outstanding shares of Slack used in the analysis.

41. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) NTM revenue estimates for Slack for each of fiscal years 2022 to 2024; (ii) Slack's forecasted net debt for each of fiscal years 2021 to 2023; (iii) the number of projected year-end fully diluted outstanding shares of Slack common stock for each of fiscal years 2021 to 2023; and (iv) quantification of the inputs and assumptions underlying the discount rate of 8.0%.

42. With respect to Goldman's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed.

43. The omission of this material information renders the statements in the "Opinion of Qatalyst Partners LP, Slack's Financial Advisor," "Opinion of Goldman Sachs & Co. LLC, Slack's Financial Advisor," and "Projected Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Qatalyst's and Company Insiders' Potential Conflicts of Interest***

44. The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Qatalyst.

45. The Registration Statement sets forth:

> Under the terms of its engagement letter, Qatalyst Partners provided Slack with financial advisory services in connection with the proposed mergers for which it will be paid approximately $60 million (provided that the final actual fee will be, in part, based on an average of the closing price of Salesforce common stock over ten

consecutive trading days up to and including the second trading day immediately preceding the closing of the mergers, and, accordingly, the final fee may vary significantly from this estimate), $5 million of which was payable upon delivery of its opinion dated December 1, 2020 (regardless of the conclusion reached in the opinion), and the remaining portion of which will be paid upon, and subject to, the closing of the mergers.

*Id*. at 77. The Registration Statement fails, however, fails to disclose how Qatalyst's fee is based on Salesforce's closing share price preceding the close of the Proposed Transaction, such that Qatalyst's "final fee may vary significantly" from the $60 million currently estimated.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. The Registration Statement also fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

48. For example, the Registration Statement sets forth:

> In connection with the merger agreement and contingent upon the closing of the mergers, each of Stewart Butterfield, Cal Henderson and Tamar Yehoshua entered into offer letters with Salesforce pursuant to which Mr. Butterfield will serve as President and Chief Executive Officer of Slack, Mr. Henderson will serve as Chief Technology Officer of Slack and Ms. Yehoshua will serve as Chief Product Officer of Slack.

*Id*. at 91. Yet, the Registration Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Salesforce and Slack executive officers and directors, including who participated in all such communications, when they occurred and their content. The Registration Statement further fails to disclose whether any of Salesforce's proposals or indications of interest mentioned management retention or equity participation in the combined company.

49. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Slack's stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50. The omission of this material information renders the statements in the "Opinion of Qatalyst Partners LP, Slack's Financial Advisor" and "Interests of Slack Directors and Executive Officers in the Mergers" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Slack will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

52. Plaintiff repeats all previous allegations as if set forth in full.

53. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It

misrepresented and/or omitted material facts, including material information about the Company's and Salesforce's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Qatalyst and Goldman, and Qatalyst's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

56. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

58. Plaintiff repeats all previous allegations as if set forth in full.

59. The Individual Defendants acted as controlling persons of Slack within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Slack, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

62.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Slack's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Slack, and against defendants, as follows:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Slack stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 9, 2021

**WEISSLAW LLP**

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS